UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TRON MANVEL LITTLEJOHN,<br># 250174, | ) | Civil Action No.: 4:08-cv-383-TLW-TER |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| JON OZMINT; JAMES SLIGH; ROBERT | ) | |
| WARD;E. RICHARD BAZZLE; STEPHEN | ) | |
| R. CLAYTOR; FLORENCE MAUNEY; | ) | |
| RHONDA ABSTON; R. BUSH; R. L. | ) | |
| TURNER; M. NAJIR; MRS. HEFFNER; | ) | |
| DANIEL MARTIN;   WADE T. BYRD; | ) | |
| CHARLES WILLIAMS, JR., MRS. | ) | |
| SCOTLAND; W. MILLER; CECILIA R. | ) | |
| REYNOLDS; JEANNE MCKAY; | ) | |
| DARRELL BECKWITH; and J. | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, is an inmate in the custody of the South Carolina

Department of Corrections (SCDC), and, at time of the incident set forth in his Complaint, was

housed at the Kershaw Correctional Institution (KCI). Plaintiff asserts claims pursuant to 42 U.S.C.

§ 1983 for violations of his constitutional rights as well as claims for discrimination, defamation of

character, conspiracy, and negligence. All pretrial proceedings in this case were referred to the

undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule

73.02(B)(2)(d), DSC. Because these motions are potentially dispositive of Plaintiff's claims, this

Report and Recommendation is entered for review by the district judge.

Presently before the Court is Defendants' Motion for Summary Judgment (Document # 46). Because Plaintiff is proceeding pro se, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response. . Plaintiff's Response to the Motion for Summary Judgment was due September 15, 2008. Plaintiff did not timely file a Response to the Motion for Summary Judgment and, on September 22, 2008, the undersigned issued a Report and Recommendation (Document # 52), recommending that Plaintiff's Complaint be dismissed for failure to prosecute pursuant to Rule 41(b), Fed.R.Civ.P. On December 22, 2008, Plaintiff filed an Objection (Document # 57) to the Report and Recommendation, to which he attached affidavits, medical records, and other documentary evidence. On January 12, 2009, the District Judge filed an Order (Document # 59) remanding the matter back to the undersigned to determine if Plaintiff's Objection should be considered a Response to the Motion for Summary Judgment and for consideration on the merits. The undersigned has reviewed Plaintiff's Objection and will deem it a Response to the Motion for Summary Judgment. Thus, this Report and Recommendation will address the merits of the Motion for Summary Judgment.

## II.    FACTS

Plaintiff's claims arise out of two charges of sexual misconduct, which occurred on March 29, 2006, and June 14, 2007, and the disciplinary hearings that followed each charge, his placement in SMU on approximately October 22, 2007, and an allegation of use of excessive force on August 4, 2006.

### A.    Charge of Sexual Misconduct–March 29, 2006

On March 29, 2006, Sgt. Scotland was conducting a count on B Wing and started on the top

tier.  See Incident Report dated March 29, 2006 (attached to Affidavit of Janice Kenealy).  Plaintiff, who was in B 106, came out of his cell and looked at Sgt. Scotland on the top tier.  Id.  When Sgt. Scotland got to the bottom tier, Plaintiff was watching her.  Id.  When Sgt. Scotland got to Plaintiff's room, he was standing facing the door in front of the toilet with his penis out.  Id.  Plaintiff was charged with Sexual Misconduct.  Id.

Plaintiff received notice of his charges on March 31, 2006.  See Disciplinary Report and Hearing Record 00018 (attached to Affidavit of Janice Kenealy).  Plaintiff refused to sign the form. Id.  The hearing was held on April 3, 2006.  Id.  Plaintiff asked for witnesses at the hearing with no prior notice or request.  Id.  The hearing officer considered the Officer's Report as evidence.  Id. Plaintiff was found guilty.  Id.

B.    Charge of Sexual Misconduct–June 14, 2007

On June 14, 2007, Officer Heffner was conducting a count in Q3 Dorm, B-Side, Top Tier, Cell 208, when Plaintiff stood facing her with his erect penis sticking straight out of the opening in his boxer shorts.  See Incident Report dated June 14, 2007 (attached to Affidavit of Janice Kenealy). Plaintiff smiled at Officer Heffner and did not try to cover himself.  Id.  Plaintiff was charged with sexual misconduct.  Id.

Plaintiff was notified of his charges on June 18, 2007.  See Disciplinary Report and Hearing Record 00023 (attached to Affidavit of Janice Kenealy).  Plaintiff indicated he wanted his accuser present and a counsel substitute.  Id.  The hearing date was June 21, 2007.  Id.  Although portions of the Disciplinary Report and Hearing Record are difficult to read, it appears that the accuser was no longer with the department at the time of the hearing so Captain Abston stood in for her.  Id.  It also appears that Plaintiff left during the hearing.  Id.  It also appears that Plaintiff was found guilty.

-3-

Id.

> C.    Placement in SMU–October 22, 2007

There is no evidence in the record regarding Plaintiff's placement in SMU on this date.

> D.    Alleged Use of Excessive Force–August 4, 2006

On August 4, 2006, Plaintiff refused to come out of a holding cell to go to lockup.  See Incident Report dated August 4, 2006 (attached to Affidavit of Janice Kenealy).  Sgt. Williams, Lt. Byrd, Officer Williams, and Officer Thompson went to the holding cell and Lt. Byrd gave Plaintiff several directives to back up to be cuffed.  Id.  Plaintiff refused all directives so Lt. Byrd directed Sgt. Williams to use chemicals on Plaintiff.  Id.  Sgt. Williams administered one burst of Top Cop chemical munitions at Plaintiff's facial area.  Id.  Plaintiff then backed up to be cuffed.  Id.  Once Plaintiff was cuffed, Plaintiff was escorted to B-Dorm and placed in the shower for decontamination.  Id.  After he was done, he was taken to his cell where he was put in a control cell status.  Id.  Nurse Tippins checked Plaintiff and stated he was fine.  Id.  The total amount of chemical munitions used was 30.4 grams.  Id.   The use of force was videotaped by Officer Thompson.  Id.  Plaintiff was charged with Inciting/Creating a Disturbance.  Id.

In the medical records, the nurse noted that, upon her review of Plaintiff, she noted his left arm to be somewhat red and his left knee to be a little red with some scrapes, but no active bleeding.  See Medical Encounter August 4, 2006.  The nurse also noted no acute distresses.  Id.  There is no mention in the medical records of any problem associated with the use of the chemical munitions.

Plaintiff was notified of his charges on August 11, 2006.  See Disciplinary Report and Hearing Record 00020 (attached to Affidavit of Janice Kenealy).  Plaintiff indicated he wanted his accuser present at the hearing and wanted a counsel substitute.  Id.  Plaintiff's hearing date was

August 16, 2006. Id. The hearing officer considered the Sgt. Williams' report and Sgt. Williams'

testimony as evidence. Id. Plaintiff was found guilty. Id.

Plaintiff seeks monetary damages and removal of all the sexual misconduct convictions from

his record.

## III.    STANDARD OF REVIEW

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to

fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), Haines v. Kerner,

404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to

decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of

liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege

facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir.

1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the

burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this

showing, however, the opposing party must respond to the motion with "specific facts showing that

there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained

in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both

parties have had ample opportunity to explore the merits of their cases and examination of the case

makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the

movant can show a complete failure of proof concerning an essential element of the non-moving

-5-

party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit.  The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."    Id. § 1997e(a). Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process.  The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002);  Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm

-6-

district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Plaintiff attaches several grievance forms to his complaint. Grievance Number PCI-386-06 addresses the sexual misconduct charge on March 29, 2006. Plaintiff filed both a Step 1 and a Step 2 grievance with respect to this claim. Both were denied. Grievance Number PCI-930-06 addresses his claim of excessive force on August 4, 2006. Plaintiff filed both a Step 1 and a Step 2 grievance with respect to this claim. Both were denied. Grievance Number PCI-1014-07 addresses the sexual misconduct charge on June 14, 2007. Plaintiff attaches his Step 1 grievance form with respect to this claim, but does not attach a Step 2 grievance form and there is no indication in the record that he appealed the denial of this particular grievance.

Plaintiff did not receive a final agency decision on the grievance he filed regarding the sexual misconduct charge on June 14, 2007. Thus, Plaintiff has not exhausted his administrative remedies with respect to this claim, and it is recommended that the court dismiss that claim for failure to exhaust administrative remedies.

Plaintiff did receive a final agency decision on the grievances filed regarding the sexual misconduct charge on March 29, 2006, and the claim of excessive force on August 4, 2006, when his Step 2 appeals were denied. Defendants assert that Plaintiff has failed to exhaust his administrative remedies with respect to these claims because he has presented no evidence that he appealed those decisions to the Administrative Law Court (ALC). However, for purposes of the § 1997e(a) exhaustion requirement, the construction of the term "administrative remedies" to include appeals through the South Carolina ALC process is overbroad. The pursuit of the South Carolina

-7-

ALC process would invoke state judicial remedies. See, James F. Flanagan, Redefining the Role of

the State Administrative Law Judge: Central Panels and Their Impact on State ALJ Authority and

Standards of Agency Review, Administrative Law Review 1355 (2002). In § 1983 matters Congress

only intended that "administrative remedies" be satisfied. See, e.g. Pozo v. McCaughtry, 286 F.3d

1022, 1024 (7th Cir.2002) (Exhaustion under § 1997e(a) is administrative only; a prisoner who uses

all administrative options that the state offers need not also pursue judicial review in state court),

cert. denied, 537 U.S. 949, 123 S.Ct. 414, 154 L.Ed.2d 293 (2002).  Thus, it is not necessary for

Plaintiff to proceed to the state judicial system to have exhausted his administrative remedies.

Accordingly, Plaintiff has exhausted his administrative remedies with respect to his claims arising

from the March 29, 2006, charge of sexual misconduct, and the August 4, 2006, alleged excessive

force, and dismissal is not proper on those grounds.

**B.    Eleventh Amendment Immunity**

 Defendants contend that Plaintiff's § 1983 claims against Defendants for monetary damages

in their official capacities are barred pursuant to their Eleventh Amendment Immunity.  Defendants

also argue that the action against Defendants should be dismissed as a matter of law to the extent that

they are sued in their official capacity because while acting in their official capacity as employees

of the SCDC they are not a "person" under 42 U.S.C. § 1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one

against the state, the real party in interest.  If review of the pleadings indicates that the state is, in

fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh

Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may

be granted, damages may not be awarded against the state.

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages for Plaintiff's claims against them in their official capacities.

**C.      Excessive Force**

It is well established that the use of excessive force upon an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992). To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2)

subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6-7. The objective component requires the inmate to prove that the use of force was more than de minimis or, in the alternative, that it was repugnant to the conscience of mankind. Id. at 9-10. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1264 (4th Cir. 1994).

Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official "inflicted unnecessary and wanton pain and suffering." Hudson, 503 U.S. at 7. In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (Internal quotations omitted). In determining whether a prison official acted maliciously and sadistically the court should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Williams, 77 F.3d at 762. Plaintiff has failed to prove the objective and subjective components of an excessive force claim.

Even assuming the plaintiff's allegations are true, the plaintiff has failed to establish a

-10-

sufficient injury.  As explained by the Fourth Circuit Court of Appeals in <u>Norman v. Taylor</u>, 25 F.3d at 1263, "absent the most extraordinary circumstances, a Plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is <u>de minimis</u>."  Because <u>de minimis</u> injury may serve as evidence that <u>de minimis</u> force was used, an excessive force claim should not lie where a prisoner's injury is <u>de minimis</u>. <u>Id.</u> at 1262-63.  "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.1973).  <u>See also</u> <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996) (holding prison officials are entitled to use appropriate force to quell prison disturbances, and acting under pressure without the luxury of a second chance, an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).

Here, the plaintiff has not alleged any specific injuries and any allegations of injury are <u>de minimis</u>. The record reveals that Plaintiff suffered scraped knees and redness in his arm following the use of force on August 4, 2006.   These injuries fall short of serious or significant injury. <u>Moseley v. King</u>, 2006 WL 2827555 (D.S.C. 2006). Further, the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than <u>de minimis</u>, but need not be significant. <u>Siglar v. Hightower</u>, 112 F.3d 191 (5th Cir.1997)(concluding that a sore, bruised ear lasting for three days was <u>de minimis</u> and failed to meet the requisite physical injury to support a claim of emotional or mental suffering).  Here, as discussed above, the plaintiff has not made such a showing of physical injury which is more than <u>de miminis</u>. Accordingly, this claim

should be dismissed.[1]

### D.    Medical Indifference

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth

Amendment prohibition of punishment which "involve the unnecessary and wanton infliction of

pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities
> fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate
> indifference to serious medical needs of a prisoner constitutes the "unnecessary and
> wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion),
> proscribed by the Eighth Amendment.  This is true whether the indifference is
> manifested by prison doctors in their response to the prisoner's needs or by prison
> guards in intentionally denying or delaying access to medical care or intentionally
> interfering with the treatment once prescribed.  Regardless of how evidenced,
> deliberate indifference to a prisoner's serious illness or injury states a cause of action
> under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note, however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating
> a medical condition does not state a valid claim of medical mistreatment
> under the Eighth Amendment.  Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner.  In order to
> state a cognizable claim, a prisoner must allege acts or omissions sufficiently
> harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

---

[1]Dismissal is also appropriate, as discussed above, based on Eleventh Amendment
immunity grounds because Plaintiff seeks only monetary damages with respect to his excessive
force claim.

Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94  (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty

-13-

of deliberate indifference."); <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3rd Cir. 1990); and <u>Smart v. Villar</u>, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).     Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." <u>Jackson v. Fair</u>, 846 F. 2d 811, 817 (1st Cir. 1988).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. <u>See</u> <u>Brown v. Thompson</u>, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  <u>See</u> <u>Smart v. Villar</u>, 547 F. 2d 112 (10th Cir. 1976); <u>Lamb v. Maschner</u>, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical judgment are not subject to judicial review in a § 1983 action. <u>Russell v. Sheffer</u>, 528 F. 2d 318, 319 (4th Cir. 1975).

Plaintiff presents no evidence that he has suffered from any objectively serious medical condition or need, or that he faced a risk of serious harm to his health or well-being.  However, even if Plaintiff has suffered from a serious medical condition or need, he has failed to present evidence that the medical staff was deliberately indifference to those needs.  Furthermore, Plaintiff has named none of the medical staff as Defendants in the action, and the named Defendants cannot be responsible for the actions of the medical staff.  A medical treatment claim is not appropriate against a superintendent/supervisor absent an allegation that he was personally connected to the treatment received.  <u>Vinnedge v. Gibbs</u>, 550 F. 2d 926 (4th Cir. 1977).  <u>See also</u> Supervisory Liability discussion below.

### E.     Supervisory Liability

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action.  <u>See</u> <u>Monell v.</u>

Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982). The employer or supervisor may only be held liable if the plaintiff can show that he had actual knowledge of the specific danger, but was deliberately indifferent to the plaintiff's needs despite his knowledge of this danger. Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984).

Plaintiff has asserted no specific claims against Defendants Ozmint, Bazzle, Claytor, Reynolds, McKay or Beckwith. Thus, it is assumed that Plaintiff is attempting to assert claims against these Defendants in their supervisory capacities. However, Plaintiff has failed to point to any official policy or custom that resulted in any illegal action. Thus, any § 1983 claims asserted against these Defendants in their supervisory capacities should be dismissed.

### F.     Due Process in Disciplinary Hearings

In administrative disciplinary hearings, prisoners are entitled to procedural safeguards if loss of good conduct time, or some other liberty interest, is at issue. The Supreme Court set out the following procedural due process requirements in Wolff v. McDonnell, 418 U.S. 539, 557 (1974).:

> 1. The inmate is entitled to a written notice of charges at least twenty-four hours in advance of the hearing to allow for preparation of a defense. Id. at 564.
>
> 2. The inmate is entitled to a written statement by the factfinder as to evidence relied on and reasons for disciplinary action. Id. at 564.
>
> 3. The inmate is entitled to call witnesses and present documentary evidence in defense if doing so is not hazardous to institutional safety or correctional goals. Id. at 566.
>
> 4. The inmate is entitled to have charges decided by fair and impartial tribunal. Id. at 570.

Prison officials are not required to state in the hearing record their reasons for denying inmate witness request; however, at some point, officials are required to state reasons, and they may make

-15-

this part of the record or present testimony in court. <u>Ponte v. Real</u>, 471 U.S. 491, 496 (1985).

Plaintiff asserts that at the hearing on his March 29, 2007, charge of sexual misconduct, neither the accuser nor his witnesses were present at the hearing. The Discipline Hearing Officer Report makes no mention of the accuser not being present but does note that Plaintiff failed to make a request for witnesses prior to the hearing. Plaintiff does not dispute this fact. Plaintiff also complains that his accuser was not present at the hearing on the June 14, 2007, charge of sexual misconduct. The Discipline Hearing Officer Report indicates that the accuser was no longer with the department and that her supervisor stood in for her per policy.

A review of the record reveals that the requirements set forth in <u>Wolfe</u> were met in each of Plaintiff's disciplinary hearings. Plaintiff has failed to present evidence to the contrary.[2]

Furthermore, a decision in disciplinary proceedings to revoke good conduct time or any other liberty interest passes scrutiny under the Due Process Clause if there is "some evidence" in the record to support the conclusions. <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985). In <u>Hill</u>, the Supreme Court noted,

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

<u>Id.</u> at 455-56; <u>Baker v. Lyles</u>, 904 F.2d 925, 933 (4th Cir.1990). The Discipline Hearing Officer Reports reveal that the decision meets the standard of "some evidence" to support the conclusion of guilt and loss of good conduct time for each of the charges about which Plaintiff complains.

---

[2]Plaintiff also complains that his accuser was not present at the hearing on June 14, 2007. However, as discussed above, it is recommended that this claim be dismissed without prejudice for failure to exhaust administrative remedies.

-16-

G.    **Qualified Immunity**

Defendants assert that they are entitled to qualified immunity in their individual capacities. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent.  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

-17-

(1985).

In <u>Torchinsky v. Siwinski</u>, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for <u>Harlow</u> qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

<u>Torchinsky</u>, 942 F.2d at 260-261. (Citations Omitted).

The <u>Torchinsky</u> court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The <u>Torchinsky</u> court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Sevigny v. Dicksey</u>, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. <u>Torchinsky</u>, 942 F. 2d at 261 (citing <u>Collinson v. Gott</u>, 895 F. 2d 994 (4th Cir. 1990)). As the Fourth Circuit explained in the case of <u>Swanson v. Powers</u>, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of

Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability
> for money damages so long as their conduct does not violate clearly established
> statutory or constitutional rights of which a reasonable person would have known.
> Moreover, there are two levels at which the immunity shield operates. First, the
> particular right must be clearly established in the law. Second, the manner in which
> this right applies to the actions of the official must also be apparent. Officials are not
> liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly

established in law, and (ii) the application of that right to the actions of the official must be apparent.

The plaintiff in this case has not done so. First, as already discussed above, Plaintiff has failed to

show Defendants violated any rights clearly established in law. Furthermore, even if a right had been

violated, there is insufficient evidence in the record that Defendants "transgressed bright lines . . .

officials are not liable for bad guesses in gray areas." Id. Therefore, Defendants are entitled to

qualified immunity on Plaintiff's claims against Defendants in their individual capacities for

monetary damages.

**H.     State Law Claims**

Plaintiff fails to submit sufficient evidence to create a genuine issue of material fact on any

of his federal constitutional claims. Thus, it is recommended that summary judgment be granted as

to those claims. If the district judge accepts this Report and Recommendation, then the original

federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent

part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . .

the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth

-19-

Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law causes of action.

## V.     CONCLUSION

For the reasons stated above, it is recommended that Plaintiff's claim arising out of the hearing on the June 14, 2007, charge of sexual misconduct be dismissed without prejudice for failure to exhaust administrative remedies, that Defendants' Motion for Summary Judgment (Document # 46) be granted as to Plaintiff's remaining federal claims and that the district judge decline to exercise jurisdiction over Plaintiff's state law claims.

Respectfully submitted,

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 6, 2009
Florence, South Carolina

**The parties' attention is directed to the important information in the attached notice.**

-20-